UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-11089-GAO

ROY DUMAS,
Petitioner,

v.

RAYMOND MARCHILLI,
Respondent.

OPINION AND ORDER
March 3, 2017

O'TOOLE, D.J.

A Massachusetts Superior Court jury convicted the petitioner, Roy Dumas, of rape of a child, indecent assault and battery on a person fourteen or older, and four counts of rape. His convictions were affirmed by the Massachusetts Appeals Court. Commonwealth v. Dumas, 986 N.E.2d 878 (Mass. App. Ct. 2013). The Massachusetts Supreme Judicial Court denied further appellate review, and the petitioner's petition for a writ of certiorari was denied by the Supreme Court. The petitioner timely filed a petition for habeas relief pursuant to 28 U.S.C. § 2254. He seeks to vacate his convictions because he claims that the evidence was insufficient to support his convictions and because the Massachusetts courts retroactively applied a new interpretation of the state rape statute against him.

I.   Background

According to evidence favorable to the Commonwealth, the victim, the child of Hmong refugees from Laos, was fifteen or sixteen years old at the time of the charged offenses. Consistently with her religious tradition, she believed that her ancestors could influence her life, both to help and to harm her. The petitioner held himself out as the leader of a secret, purportedly

charitable organization that only people of Asian or Native American descent could join. The victim was encouraged to join the organization, but was told by the petitioner that she would have to pass some tests in order to be admitted. The petitioner thereafter sexually assaulted the victim on multiple occasions under the guise of tests she needed to pass and/or penalties for breaking supposed rules. He told the victim that he was able to communicate with her ancestors, and if she did not comply with his sexual demands, the victim's ancestors would hurt her or her family. The victim believed the petitioner, and in particular believed that the petitioner could induce the ancestors to harm her physically. It was the Commonwealth's theory that the petitioner's threats to cause harm to the victim with the aid of her ancestors constituted "constructive force" under Massachusetts law that was sufficient to prove an element of the crime of rape by force.

The petitioner disputes the victim's age when the first sexual acts took place. On direct examination, the victim testified that the first alleged assault occurred when she was fifteen or sixteen. When asked to clarify, she stated "I think I was fifteen." (Suppl. Answer 441 (dkt. no. 29).) Later in the examination, she agreed with the prosecutor that she had been fifteen the first time the petitioner performed a sexual act with her. On cross-examination, she acquiesced that "possibly" she was sixteen when the first assault took place. (Id. at 496.)

At least four other assaults followed the first incident, and there seems to be no dispute that all took place when the victim was sixteen. In each instance, the petitioner told the victim that these sexual acts were a necessary test to enter the organization or a penalty that she must endure or else her ancestors would be upset with her and would harm her. The acts included, among other things, blindfolding, being stripped naked, and being taken deep into the woods with no one else around. On at least one occasion, the victim began to cry loudly and the petitioner yelled at her.

**II.     Standard of Review**

Post-conviction relief pursuant to § 2254 is an extraordinary remedy. Under the standard of review established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition will not be granted "with respect to any claim that was adjudicated on the merits in state court proceedings" unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Habeas relief is not warranted if the state court's decision was merely erroneous or incorrect; it must have been "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 27 (2002).

**III.     Discussion**

The petitioner contends that his § 2254 petition should be granted on three distinct grounds. First, he contends that there was insufficient evidence to convict him of rape of a child because the victim was equivocal as to her age at the time of the first incident. Second, he argues that there was insufficient evidence to convict him of the four counts of rape because there was insufficient evidence that he used force to coerce the victim. Relatedly, he says that the legal doctrine of "constructive force" was only developed in a way to encompass his actions in judicial decisions that were published after the commission of the crimes, so that holding him to that standard would violate due process.

   A.     Sufficiency of the Evidence

Under Jackson v. Virginia, the record evidence must be substantial enough to support a finding of guilt beyond a reasonable doubt. 443 U.S. 307, 318–19 (1979). However, in a § 2254 petition, claims for review under Jackson "are subject to two layers of judicial deference."

Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam). First, based on the Jackson standard "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Id. (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam)). Second, following the standard set out in § 2254(d)(1), a federal court may overturn a state court's sufficiency analysis under Jackson "only if the state court decision was objectively unreasonable." Id. (quoting Cavazos, 132 S. Ct. at 4) (internal quotation mark omitted).

The standard is high but not insurmountable. See O'Laughlin v. O'Brien, 568 F.3d 287, 301–02 (1st Cir. 2009) (collecting cases). The record evidence must be sufficient for a jury to conclude that the petitioner committed the crime *beyond a reasonable doubt*. Simply because the "instant facts may support a reasonable speculation" that the crime was committed is not "sufficient evidence to establish [the petitioner's] guilt." See id. at 302.

*i.    Age of the Victim*

The petitioner claims that insufficient evidence was presented at trial to support a finding beyond a reasonable doubt that the victim was under the age of sixteen at the time of the first assault, and thus his conviction for rape of a child must be overturned under Jackson. To prove the charge of rape of a child, it was necessary for the Commonwealth to prove beyond a reasonable doubt that the assault took place when the victim was under the age of sixteen. Mass. Gen. Laws, ch. 265, § 23. The Massachusetts crime of statutory rape has only two elements: "(1) sexual intercourse or unnatural sexual intercourse with (2) a child under sixteen years of age." Commonwealth v. Bernardo B., 900 N.E.2d 834, 845 (Mass. 2009).

Evidence of the victim's age at the first sexual encounter between herself and the petitioner was sparse. The uncontested evidence is that the victim turned sixteen in early April, 2003. (Suppl.

Answer 433.) The first time the victim met the petitioner, she was brought "[t]o a house on Madison Street." (Id. at 439.)[1] The victim testified on direct:

> Q. Do you remember what the weather was like when [a third party] brought you there, what it was like the first time you were brought there?
> A. Springtime.

(Id.)

> Q. Now, how old were you when that [first meeting] took place, if you remember?
> A. Fifteen, sixteen.
> Q. Well, it's important to know whether you were fifteen or sixteen, if you remember.
> A. I think I was fifteen.

(Id. at 441.)

When discussing the conduct charged as statutory rape that took place on that first day—described by the petitioner to the victim as a "purity test"—the victim further testified:

> Q. And where was that test?
> A. At his house.
> Q. At which house?
> A. Roy's house.
> . . .
> Q. And you were fifteen at that point?
> A. Yes.

(Id. at 447.)

On cross-examination, the victim was again asked about her age:

> Q. I want to call your attention to the first time you went to Mr. Dumas' house. You said that you—in questioning having to do with meeting on this first occasion, you thought you might have been fifteen years old?
> A. Yes.
> Q. Is it possible you were sixteen?
> A. Possibly.

---

[1] The parties had stipulated that the petitioner moved from Madison Street to Plymouth Street on July 3, 2003. (Id. at 431.) Accordingly, an event at Madison Street would have occurred sometime before that date.

Answer 433.) The first time the victim met the petitioner, she was brought "[t]o a house on Madison Street." (Id. at 439.)[1] The victim testified on direct:

> Q. Do you remember what the weather was like when [a third party] brought you there, what it was like the first time you were brought there?
> A. Springtime.

(Id.)

> Q. Now, how old were you when that [first meeting] took place, if you remember?
> A. Fifteen, sixteen.
> Q. Well, it's important to know whether you were fifteen or sixteen, if you remember.
> A. I think I was fifteen.

(Id. at 441.)

When discussing the conduct charged as statutory rape that took place on that first day—described by the petitioner to the victim as a "purity test"—the victim further testified:

> Q. And where was that test?
> A. At his house.
> Q. At which house?
> A. Roy's house.
> . . .
> Q. And you were fifteen at that point?
> A. Yes.

(Id. at 447.)

On cross-examination, the victim was again asked about her age:

> Q. I want to call your attention to the first time you went to Mr. Dumas' house. You said that you—in questioning having to do with meeting on this first occasion, you thought you might have been fifteen years old?
> A. Yes.
> Q. Is it possible you were sixteen?
> A. Possibly.

---

[1] The parties had stipulated that the petitioner moved from Madison Street to Plymouth Street on July 3, 2003. (Id. at 431.) Accordingly, an event at Madison Street would have occurred sometime before that date.

(Id. at 496.)

The police officer who first interviewed the victim also testified. She was asked by both sides if she recalled what the victim had told her about where the petitioner was living when he first met the victim. When she did not recall, the petitioner's counsel refreshed the officer's recollection with minutes from her grand jury testimony. According to the minutes, the officer had said that the first contact the petitioner had had with the victim took place at the petitioner's Plymouth Street apartment. That would have placed the date after July 3, and the victim's age would have been sixteen. The officer agreed that the minutes accurately reflected her grand jury testimony. However, the prosecutor refreshed the officer's recollection with her police report, which said that the victim believed the location of the first encounter was at Madison Street. If true, it could have been that the victim was fifteen at the time, although not necessarily so.

Thus, the sum total of the evidence presented to the jury concerning the victim's age at the time the conduct charged as statutory rape occurred was: (1) the victim turned sixteen in early April, (2) the charged conduct happened in "springtime," (3) it probably happened at Madison Street before the petitioner moved from there on July 3, (4) the victim thought she was fifteen,[2] but (5) was "possibly" sixteen.

The most that could be reliably concluded from this evidence is that the victim may have been fifteen at the time of the first incident. The only direct evidence of her age was her own uncertain testimony that she thought she was fifteen, but it was possible she was sixteen. Based on that direct evidence, a rational trier of fact might venture so far as to conclude that it was more likely than not that she was fifteen at the relevant time—that she was probably right in her best recollection. What a rational trier could not conclude on the victim's evidence alone, however, is

---

[2] "I think I was fifteen." (Id. at 441.)

that it would be unreasonable to doubt the reliability of her recollection, and therefore that it had been shown beyond a reasonable doubt that she was fifteen.

The state appellate court's observation that "'[e]xpressions of uncertainty' in a victim's testimony . . . 'go to the weight of the evidence and are for the jury,'" Commonwealth v. Dumas, 986 N.E.2d 878, 880 (Mass. App. Ct. 2013) (quoting Commonwealth v. Campbell, 800 N.E.2d 1055, 1059 (Mass. App. Ct. 2003)), begs the question. The relevant question under Jackson is not whether jurors may weigh the evidence, but rather whether the evidence is objectively *weighty enough* that a rational trier of fact could conclude on the basis of that evidence that a necessary fact had been proven beyond a reasonable doubt.

This case is thus not like those where the jury is called upon to resolve a conflict in the evidence. Cf. Housen v. Gelb, 744 F.3d 221, 225–26 (1st Cir. 2014) (weighing circumstantial evidence of whether defendant was present at scene); Magraw v. Roden, 743 F.3d 1, 5–6 (1st Cir. 2014) (choosing between two experts' theories on the cause of death). Unlike cases of that sort, the question here is not whether the jury might find more convincing one of alternate, plausibly supported, possible conclusions. Here, the question is whether the totality of the evidence of a crucial fact is in itself sufficiently probative that a rational trier of fact, relying on that evidence, could harbor no reasonable doubt that the fact was true. In testifying that "I think I was fifteen," but also acknowledging that she was "possibly" sixteen, the victim signaled that *she herself* had some doubt as to her age at the relevant time. Without more, a rational jury could not disregard that doubt and conclude that the fact she was fifteen at the relevant time had been proved by the evidence beyond a reasonable doubt.

In some cases, other evidence might make up for the deficit in probative force of a victim's own statements. For example, in Economou v. Pepe the victim was uncertain as to her age and

testified that she was "about fifteen." 96 F. App'x 5, 8 (1st Cir. 2004). However, she also testified that she was still at her junior high school at the time of the assault, and that she did not turn sixteen until after she had left that school. See id. at 8–9. That, and other, circumstantial support for the victim's own uncertain testimony contrasts sharply with the present case.

Here, there were two potentially helpful pieces of circumstantial evidence: first, that the assault took place in "springtime," and second, that it occurred at the petitioner's residence on Madison Street. Neither fact is helpful in deciding whether the assault took place before or after her sixteenth birthday in early April, because each is perfectly consistent with either possibility. In other words, the only potentially helpful circumstantial evidence is equivocal.

The conclusion by the state appellate court that the evidence of the victim's age at the time of the first assault was sufficient to support a finding beyond a reasonable doubt that she was younger than sixteen was an objectively unreasonable application of the Jackson principle. See 28 U.S.C. § 2254(d)(1). The court discussed the question in terms of state law, Dumas, 986 N.E.2d at 880, citing Commonwealth v. Lattimore, 393 N.E.2d 370 (1979). The Lattimore sufficiency of the evidence standard is the same as the Jackson standard, so that a decision applying Lattimore's standard is equivalent to applying the federal constitutional standard. Leftwich v. Maloney, 532 F.3d 20, 24 (1st Cir. 2008). The defendant's conviction on the indictment charging him with rape of a child was based on insufficient evidence to establish all the necessary elements of that crime beyond a reasonable doubt, and consequently, that conviction denied him the due process guaranteed by the Fourteenth Amendment.

      *ii.*      *Use of Force*

The petitioner next argues that, as to the four convictions of rape, the evidence was insufficient to show the use of force necessary to prove that the petitioner coerced the victim into submitting to the sexual acts against her will.

In Massachusetts, the element of "force" in the crime of rape is not limited to physical force. See Commonwealth v. Caracciola, 569 N.E.2d 774, 776 (Mass. 1991). In this context, force includes "constructive force," which "is by threatening words or gestures and operates on the mind." Id. at 777 (quoting Commonwealth v. Novicki, 87 N.E.2d 1, 4 (Mass. 1949)). In evaluating force, "the jury is entitled to 'consider the entire sequence of events and acts of [the] defendant[] as it affected the victim's ability to resist.'" Id. at 776 (citation omitted).

The petitioner's argument on this point does not present a question of federal constitutional principles. His argument appears to be that his actions in inducing the victim to submit to his sexual contact with her do not constitute constructive force under Massachusetts law. That question of state law was resolved in favor of the prosecution by the state appellate court on direct review. See Dumas, 986 N.E.2d at 880–81. To the extent that a Jackson issue is raised by the petitioner's argument, based on the testimony at trial, a rational jury could have concluded beyond a reasonable doubt that the petitioner's actions and threats placed fear in the victim's mind such that "her fear aided the [petitioner] in effecting" the crime. See Caracciola, 596 N.E.2d at 777 (citation omitted).

    B.      Retroactive Application of the Law

The petitioner finally claims that he was convicted of rape on an elaboration of the theory of constructive force that was not developed in Massachusetts law until after the events of this

case, and thus to apply that theory violates his due process rights.[3] See Commonwealth v. Wallace, 922 N.E.2d 834 (Mass. App. Ct. 2010); Commonwealth v. Armstrong, 897 N.E.2d 105 (Mass. App. Ct. 2008). This argument fails for two reasons. First, Caracciola provides the theory of constructive force necessary to convict the petitioner of his acts, and as that case was decided over a decade before his crimes, no *ex-post-facto*-type problem arises. See Caracciola, 569 N.E.2d at 776–78; see also Dumas, 986 N.E.2d at 882 (finding the same on direct review).

Second, even if Armstrong and Wallace provide some theoretical underpinning for the petitioner's conviction, applying those cases to the petitioner would not violate due process.

The petitioner argues that Caracciola required the display of potential physical force—such as a gun or police badge—and that rape was only expanded beyond those boundaries in the later cases of Wallace and Armstrong. However, in Caracciola, the Supreme Judicial Court made clear that it would not make the "unwarranted assumption" that "physical force is a required element in rape cases." 569 N.E.2d at 777. While Caracciola concerned a defendant posing as a police officer, the court's decision did not turn on the defendant's choice of costume. As the court stated:

> We think the defendant's lie about being a police officer is irrelevant. The complainant was entitled to take the defendant's threatening words and his conduct at face value. Those threats and the circumstances created by his conduct and his words are sufficient to constitute the force contemplated by the statute.

Id. Following from that reasoning, it is not "unexpected and indefensible" to conclude that a defendant's words and threats alone can so exert "power, influence, and control" as to "overcome"

---

[3] While neither *ex post facto* clause of the Constitution applies directly to the judiciary, due process requires that criminal statutes and their judicial interpretations give defendants "fair warning" of what conduct constitutes a crime. Rogers v. Tennessee, 532 U.S. 451, 457 (2001). Judicial interpretations may expand the previously understood scope of a criminal statute, but those new constructions cannot be given retroactive effect if they are "unexpected and indefensible" when compared to the prior law. Id. (quoting Bouie v. City of Columbia, 378 U.S. 347, 354 (1964)).

a victim's will and thus satisfy the force requirement of the statute. See Wallace, 922 N.E.2d at 417–18.[4]

## IV. Conclusion

For the reasons stated above, the petitioner has successfully shown that there was insufficient evidence to support his conviction of rape of a child, and that conviction and sentence shall be vacated with prejudice to reprosecution. See O'Laughlin, 568 F.3d at 309 (stating that the Double Jeopardy Clause bars a second trial after the evidence presented at trial is found legally insufficient). However, the petitioner has not shown that his other convictions were obtained in a way "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1).

Thus, the petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (dkt. no. 1) is GRANTED as to the rape of a child conviction and DENIED as to the other convictions. The petitioner was sentenced to concurrent terms of incarceration of identical length for each of his convictions of rape and rape of a child. Thus, he is not entitled to release. He was also sentenced to a term of probation to begin at the expiration of his sentence for his statutory rape conviction. (See Suppl. Answer 652.) In light of these circumstances, the matter is to be presented to the state trial court for reconsideration, consistent with this Order, of the petitioner's sentence as to the five counts for which convictions stand.

Finally, because the petitioner has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), as to his convictions of rape and indecent assault,

---

[4] Much of the petitioner's argument on constructive force is beside the point. As the state appellate court reasonably found, there was also evidence that the petitioner used and threatened physical force in committing the rapes. See Dumas, 986 N.E.2d at 880 n.2.

no certificate of appealability shall issue on those grounds.

    It is SO ORDERED.

                                                 /s/ George A. O'Toole, Jr.
                                                United States District Judge